IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| RONALD K. BRITCHER, JR. | ) | |
| | ) | |
| v. | ) | No. 3:14-2376 |
| | ) | |
| NANCY A. BERRYHILL | ) | |
|     Acting Commissioner of | ) | |
|     Social Security[1] | ) | |

To:    The Honorable Waverly D. Crenshaw, Chief District Judge

# R E P O R T   A N D   R E C O M M E N D A T I O N

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying Plaintiff's claim for Disability Insurance Benefits ("DIB"), as provided under Titles II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry No. 12), to which Defendant has responded. Docket Entry No. 14.

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion for judgment on the administrative record (Docket Entry No. 12) be **DENIED**.

## I. INTRODUCTION

Plaintiff filed an application for DIB on September 29, 2010. *See* Transcript of the Administrative Record (Docket Entry No. 10) at 72.[2] He alleged a disability onset date of

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

May 21, 2010. AR 72-73. Plaintiff asserted that he was unable to work due to a back fracture and left leg pain. AR 77.

Plaintiff's applications were denied initially and upon reconsideration AR 72-73. Pursuant to his request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Renee S. Andrews-Turner on November 28, 2012. AR 40. Plaintiff again appeared with counsel before ALJ Andrews-Turner for a supplemental hearing on January 15, 2013. AR 26. On February 22, 2013, the ALJ denied the claim. AR 9-11. On July 5, 2013, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision (AR 1-3), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision on February 22, 2013. AR 9. Based upon the record, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since May 21, 2010, the alleged onset date (20 CFR 404.1571 *et seq*.).

\*\*\*

3. The claimant has the following severe impairments: degenerative disc disease of the thoracic and cervical spines (20 CFR 404.1520(c)).

\*\*\*

---

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in large black print on the bottom right corner of each page. All other filings are hereinafter referenced by the abbreviation "DE" followed by the corresponding docket entry number and page number(s) where appropriate.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

\*\*\*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). He can lift and/or carry 20 pounds occasionally and ten pounds frequently. He can stand and walk for two hours in an eight-hour workday. He can sit for six hours in an eight-hour workday. He can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. He can never climb ladders, ropes, or scaffolds. He requires the use of a cane to ambulate.

\*\*\*

6. The claimant is capable of performing past relevant work as a gun repairer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

\*\*\*

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 21, 2010, through the date of this decision (20 CFR 404.1520(f)).

AR 14-21.

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining

3

substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g.*, *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g.*, *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

## B. Determining Disability at the Administrative Level

The claimant has the ultimate burden of establishing an entitlement to benefits by proving his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 432(d)(3) and 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), and 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if he applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that he is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that he suffers from a severe impairment that meets the 12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless

of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra*; *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render him presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to his past relevant work. *Combs, supra.* "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs*, *supra.*

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the

6

Case 3:14-cv-02376    Document 18    Filed 07/24/17    Page 6 of 20 PageID #: 808

national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 402 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

### C. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step four of the five-step process. The ALJ found that Plaintiff met the first two steps, but determined at step three that Plaintiff was not presumptively disabled because he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was able to

7

Case 3:14-cv-02376    Document 18    Filed 07/24/17    Page 7 of 20 PageID #: 809

perform past relevant work as a gun repairer, and thus concluded that Plaintiff has not been under a disability since the alleged onset date of May 21, 2010. AR 14-21.

### D. Plaintiff's Assertions of Error

Plaintiff argues that the ALJ erred by (1) failing to properly evaluate the opinion of the treating physician; (2) failing to consider whether his condition is medically equivalent to a Listed Impairment; and (3) failing to include psychological limitations in the RFC. DE 13. Plaintiff therefore requests that this case be reversed and benefits awarded, or, alternatively, remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration. *Id*. at 17.

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994). The Court addresses each of Plaintiff's assertions of error below.

### 1. Treating physician.

Plaintiff contends that the ALJ failed to provide good reasons for discounting the opinion of his treating physician, Dr. Joanna Shaw. DE 13 at 9. Plaintiff also faults the ALJ for according

8

greater weight to the opinions of State agency medical consultants without sufficiently explaining the basis for this determination. *Id*. at 10-11.

It is well-established that a treating physician's opinion must be accorded controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004)). If an ALJ refuses to give controlling weight to the opinion of a treating physician, the ALJ must provide "good reasons" for the weight that is ultimately assigned to the opinion. *See* 20 C.F.R. § 404.1527(c)(2). In evaluating the amount of weight to assign to the treating physician's opinion, the ALJ must consider several factors, including, among other things, the nature and extent of the treatment relationship, the supportability of the opinion, and the consistency of the opinion. *See* 20 C.F.R. § 404.1527(c)(2)-(6).

In the instant case, Dr. Shaw completed a "Physical Capacity Evaluation" ("PCE") that included severe restrictions pertaining to Plaintiff's physical capabilities. Dr. Shaw opined that during the course of an eight-hour workday, Plaintiff would never be able to stand or walk and would be only be able to sit for a total of one hour. AR 456. Dr. Shaw's evaluation also stated that Plaintiff would never be able to push, pull, reach, perform fine manipulation, bend, squat, crawl, climb, or stoop, and that Plaintiff would be unable to lift or carry more than five pounds. AR 456. Dr. Shaw additionally opined that Plaintiff would only "occasionally" be able to perform simple grasping, and stated that Plaintiff would be required to lie down or prop his feet up for two hours during an eight-hour workday. AR 456. In support of her opinion, Dr. Shaw stated that Plaintiff suffered from "chronic pain syndrome from neck to feet since return from Iraq/Gulf [war]," and noted that Plaintiff was status-post surgery stemming from a thoracic

9

fracture in 2005. AR 456. She also stated that Plaintiff has a "history of falls at jobs such as in 2010." AR 456.

> The ALJ provided the following rationale for discounting this opinion:
>
> Little weight is given to the opinion of the claimant's treating physician, Dr. Joanna Shaw because it is not consistent with the record as a whole. Based on Dr. Shaw's opinion, the claimant can never perform postural activities, and would need to lie down, or recline, [for] seven of eight hours in a workday .... This is not consistent with the objective medical findings in the record.

AR 20. This scant analysis certainly gives some credence to Plaintiff's contention that the ALJ failed to provide good reasons for discounting Dr. Shaw's opinion. Plaintiff argues that this "cursory explanation" is inconsistent with the Sixth Circuit's holding in *Wilson*, which affirmed the requirement that the ALJ provide good reasons for not giving a treating physician's opinion controlling weight. DE 13 at 9-10. However, the Sixth Circuit in the *Wilson* decision also held that disregard of the treating physician rule can represent harmless error in three situations: (1) where the treating physician's opinion is "so patently deficient that the Commissioner could not possibly credit it"; (2) where the treating physician's opinion is adopted or the ALJ makes findings consistent with the treating physician's opinion; or (3) where the Commissioner "has met the goal of § 1527[(c)](2) ... even though she has not complied with the terms of the regulation." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (citing *Wilson*, 378 at 547).

To the extent that the ALJ disregarded the treating physician rule, the Court finds that such an error is harmless. For one, Dr. Shaw provides very little support for the extreme limitations contained in her PCE. She simply identifies "chronic pain syndrome" as Plaintiff's condition and notes that he fell at work in 2010. AR 456. Additionally, Dr. Shaw's own records documenting her treatment of Plaintiff fail to bolster such restrictions. In each of the three

encounters with Plaintiff that took place prior to completion of the PCE, Dr. Shaw found that Plaintiff demonstrated a full range of motion with respect to his back. AR 545-58, 650-53, 667-68. The only noted symptom during each of these visits was "tenderness to palpation lumbar and thoracic spine." AR 547, 651, 668. These visits largely involved management of pain medication and recommendations that Plaintiff decrease his alcohol consumption. AR 547, 652. Plaintiff points to no evidence to support Dr. Shaw's opinion other than his hearing testimony that he "desired to lie down in the waiting room" due to pain prior to his hearing (DE 13 at 10), but this does little to substantiate the severity of the limitations contained in the PCE. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion ... the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

The imaging studies and diagnostic reports contained in the record similarly fail to support Dr. Shaw's ascribed limitations. An MRI of Plaintiff's lumbar spine performed in 2011 was completely normal. AR 351. X-rays of Plaintiff's cervical spine showed mild degenerative disc disease at the C4-5 level. AR 481-82. The only significant finding with respect to Plaintiff's back involves an MRI of Plaintiff's thoracic spine performed in 2011, which demonstrated an "old compression fracture" at the T8-12 levels stemming from an injury sustained in 2005, with evidence of "minimal and mild disc bulging" elsewhere in the thoracic spine. AR 45-46, 478-79, 516.

This lack of objective evidence further supports the ALJ's decision to discount Dr. Shaw's opinion, as a treating physician's opinion may only receive controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544

(citing 20 C.F.R. § 404.1527(c)(2)). The Court therefore finds that Dr. Shaw's opinion is "so patently deficient" that the ALJ "could not possibly credit it[.]" *Id*. at 547.

The Court also addresses Plaintiff's contention that the ALJ accorded improper weight to the opinions provided by Dr. Kanika Chaudhuri and Dr. James Mills, both of whom are non-examining physicians who provided opinions regarding the extent of Plaintiff's functional limitations. *See* AR 331-39, 447-55. Plaintiff erroneously claims that the only reason provided by the ALJ for crediting these opinions was a statement that the authors of these opinion are "acceptable medical sources[] who based their opinions on a review of the medical record." DE 13 at 10. While the ALJ indeed included this statement in the opinion, she also specifically pointed to imaging studies that indicated mild findings in the cervical spine and "no more than moderate" findings in the thoracic spine. AR 20. This discussion not only refutes Plaintiff's mischaracterization of the basis on which the ALJ credited the opinions of these medical consultants, but also demonstrates that the ALJ "met the goal" of the treating physician rule by "indirectly attack[ing]" the supportability of Dr. Shaw's opinion. *Friend*, 375 F. App'x at 551 (internal citations omitted).

The treating physician rule is "not a procrustean bed, requiring an arbitrary conformity at all times." *Id*. If the ALJ's opinion "permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion," the ALJ's failure to provide a robust explanation of the reasons for discounting the treating physician's opinion can be excused. *Id*. As discussed above, the Court finds that Dr. Shaw's opinion was so "patently deficient" that it could not be credited, and additionally that the ALJ indirectly attacked Dr. Shaw's opinion by referencing the lack of objective findings in the record that would support

12

her opinion. Accordingly, the Court finds that any violation of 20 C.F.R. § 404.1527(c) in this case represents harmless error.

**2. Listing 1.04.**

Plaintiff next alleges that the ALJ erred by failing to consider whether his condition is medically equivalent to the criteria contained in Listing 1.04. Although the ALJ provided an explanation as to why Plaintiff does not *meet* the criteria contained in Listing 1.04, including a lack of evidence to support such a finding (AR 16), Plaintiff faults the ALJ for failing to "expressly discuss[] the possibility of medical equivalence" in light of his previous thoracic fracture and his alleged difficulty with standing and ambulating. DE 13 at 12-13.

At least one other court in this circuit has considered this argument analogous to a claim that the ALJ erred by failing to consider a specific section of a listing at step three of the sequential evaluation process. *See Waterman v. Comm'r of Soc. Sec.*, No. 2:16-CV-059, 2017 WL 393093, at *5 (S.D. Ohio Jan. 30, 2017), *report and recommendation adopted*, 2017 WL 821687 (S.D. Ohio Mar. 2, 2017). In such a scenario, in which the ALJ fails to discuss a section of the listing that appears to pertain to one of the subject claimant's impairments, such an error becomes reversible if "it is possible that the evidence [the claimant] put forth could meet [the] listing." *Reiser v. Comm'r of Soc. Sec.*, No. 2:11-CV-1010, 2012 WL 6138987, at *6 (S.D. Ohio Dec. 11, 2012), *report and recommendation adopted*, 2013 WL 139890 (S.D. Ohio Jan. 10, 2013) (citing *Reynolds v. Comm'r of Social Security*, 424 F. App'x 411, 416 (6th Cir. 2011)). The issue is thus whether there is sufficient evidence of equivalence to "trigger a duty on the part of the ALJ" to discuss the possibility of equivalence. *Waterman*, 2017 WL 393093, at *5.

Here, the Court finds that no such duty was triggered. Of note, it is Plaintiff's burden to prove, and not the Commissioner's burden to disprove, that the evidence of record supports a

13

finding of medical equivalence at step three of the evaluation. *Evans v. Sec'y of Health & Human Servs.,* 820 F.2d 161, 164 (6th Cir. 1987) (per curiam); *see also Moran v. Comm'r of Soc. Sec.*, 40 F. Supp. 3d 896, 925 (E.D. Mich. 2014) ("[A]n ALJ's Listing analysis must be viewed in light of the evidence the claimant presents."). In support of his claim for medical equivalence, Plaintiff merely recites "the introductory language in Listing 1.00" regarding the definition of "effective ambulation" (DE 13 at 13-14), then states vaguely that by 2012, he "was no longer capable of effective ambulation and according to his physicians and testimony, did not move about significantly without the use of his motorized scooter." *Id*. at 14. Plaintiff fails, however, to identify any medical opinion suggesting that his condition is equivalent to a listed impairment, which severely undermines his position. *See Waterman*, 2017 WL 393093, at *5 ("There is no medical opinion in this case that the combination of Plaintiff's symptoms is the equivalent of any section of the Listing, and medical equivalence is ordinarily a medical judgment."); *see also Smith-Johnson v. Comm'r of Soc. Sec.,* 579 F. App'x 426, 432-33 (6th Cir. 2014) (holding that if a claimant fails to "point to specific evidence that demonstrates he reasonably could meet or equal every requirement of [a] listing," then "the ALJ does not commit reversible error by failing to evaluate a listing at Step Three").

Additionally, the ALJ explicitly discussed Plaintiff's allegations regarding his ability to walk and ultimately determined that Plaintiff requires the use of a cane to ambulate and can stand and walk for two hours during the workday, as delineated in the RFC. AR 16, 17-20. Because the ALJ concluded that Plaintiff's symptoms caused physical limitations that hindered his ability to ambulate, as delineated in the restrictions contained in the RFC, "there is no reasonable likelihood that the ALJ would have found these same symptoms to be the equivalent of any section of the Listing." *Waterman*, 2017 WL 393093, at *5. The ALJ also specifically considered

14

whether the evidence of record demonstrated that Plaintiff's condition met Listing 1.04 in light of his symptoms, thus distinguishing this matter from *Reynolds v. Comm'r of Soc. Sec.*, which Plaintiff cites in support of his argument. 424 F. App'x 411, 416 (6th Cir. 2011) ("[T]he ALJ erred by failing to analyze [the claimant's] physical condition in relation to the Listed Impairments. Put simply, he skipped an entire step of the necessary analysis.").

Moreover, contrary to Plaintiff's suggestion otherwise, the ALJ is under no duty to provide a detailed explanation with respect to her findings at step three of the evaluation:

> An ALJ's explanation of [her] step-three determination need not be elaborate. The Sixth Circuit has consistently rejected a heightened articulation standard, noting in *Bledsoe v. Barnhart* that the ALJ is under no obligation to spell out "every consideration that went into the step three determination" or "the weight [she] gave each factor in [her] step three analysis," or to discuss every single impairment. 165 F. App'x 408, 411 (6th Cir. 2006). Nor is the procedure so legalistic that the requisite explanation and support must be located entirely within the section of the ALJ's decision devoted specifically to step three[.]

*Staggs v. Astrue*, No. 2:09-CV-00097, 2011 WL 3444014, at *3 (M.D. Tenn. Aug. 8, 2011). Other courts have similarly held that the ALJ does not commit reversible error by failing to discuss each piece of evidence that supports the ALJ's conclusion regarding medical equivalence. *See Kilgore v. Colvin*, No. 12-174-GFVT, 2013 WL 12121317, at *2 (E.D. Ky. Sept. 30, 2013) (noting that although the Sixth Circuit has held that "the regulations favor an analysis by the ALJ that involves a specific application of record evidence with the listing criteria, it does not go so far as to exalt that requirement over the general rules of agency decision review so as to require remand when such a detailed analysis is not conducted"); *Roby v. Colvin*, No. 114-164-GNSHBB, 2016 WL 164325, at *3 (W.D. Ky. Jan. 13, 2016) (holding that because the ALJ's decision was supported by evidence in the record, "it was unnecessary for the ALJ to make specific findings regarding a particular listed impairment") (citing *Malone v. Comm'r of Soc. Sec.*, 507 F .App'x 470 (6th Cir. 2012)). The Court thus finds no merit in

15

Plaintiff's contention that the ALJ was required to provide a more comprehensive discussion at step three of the evaluation.

"Even in cases where the claimant has had an impairment which came very close to meeting a listing, this court has refused to disturb the [Commissioner's] finding on medical equivalence." *Retka v. Comm'r of Soc. Sec.*, 70 F.3d 1272 (6th Cir. 1995) (citing *Dorton v. Heckler,* 789 F.2d 363, 366 (6th Cir. 1986) (per curiam); *Price v. Heckler,* 767 F.2d 281, 284 (6th Cir. 1985) (per curiam)). Plaintiff relies on his diminished walking capacity to claim that his condition is medically equivalent to Listing 1.04, yet the ALJ specifically discussed how the clinical findings and imaging studies do not support Plaintiff's contention that he suffers from disabling pain due to a back disorder. Therefore, to the extent that the ALJ committed any error by failing to explicitly discuss the possibility of medical equivalence to Listing 1.04, such error is harmless.

**3. Psychological limitations.**

Plaintiff argues that the ALJ committed reversible error by failing to include any psychological limitations in the RFC. Plaintiff claims that the ALJ ignored evidence of his mental condition, including a determination by the Department of Veterans Affairs ("VA")[3] that Plaintiff was 100% disabled due to post-traumatic stress disorder ("PTSD"). DE 13 at 15.

As an initial matter, the ALJ is "not required to defer to judgments made by another agency." *Moore v. Colvin*, No. 3:14-cv-1525, 2015 WL 1648985, at *7 (M.D. Tenn. Apr. 13, 2015). While the ALJ is required to consider such evidence, "the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner," thus the ALJ is "not bound by disability decisions by other governmental and

---

[3] Plaintiff incorrectly identifies this department as the "Veteran's Administration." DE 13 at 15.

nongovernmental agencies." SSR 06-03p, 2006 WL 2329939, *7 (August 9, 2006).[4] Instead, the ALJ "should explain the consideration given to these decisions[.]" *Id*.

Here, the ALJ provided such an explanation. After explicitly referencing the VA rating, the ALJ concluded that Plaintiff's PTSD represented a non-severe impairment based on the effectiveness of Plaintiff's treatment, Plaintiff's failure to claim any disability due to a mental impairment, and the "overall lack of evidence in the record as to limitations based on mental symptoms." AR 19. The ALJ highlighted records indicating that Plaintiff's mental symptoms were under control and noted that there were no psychological opinions in the record regarding any mental impairments. AR 15. The Court also notes that in response to the ALJ's questioning, Plaintiff testified that he has not had any significant problems with his mental health. AR 63. As such, Plaintiff's claim that the ALJ failed to "properly consider[]" his mental conditions is unfounded.

As noted by the ALJ, there is no opinion in the record that recommends any functional limitations due to Plaintiff's alleged mental condition. Plaintiff points to a global assessment of functioning score ("GAF") of 55 that he received during a visit in April of 2012 (AR 599), but GAF scores carry no particular weight in the Social Security context. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place."); *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007) ("[T]he Commissioner has declined to endorse the [GAF] score for use in the Social Security and SSI disability programs, and has indicated that [GAF] scores have no direct correlation to the severity requirements of the mental

---

[4] SSR 06-03p was rescinded on March 27, 2017. However, because Plaintiff's complaint was filed in 2014, the Court applies SSR 06-03p to its analysis of this claim.

disorders listings.") (quoting *DeBoard v. Comm'r of Soc. Sec.,* 211 F. App'x 411 (6th Cir. 2006)) (internal quotations omitted). Plaintiff thus provides no relevant evidence to refute the ALJ's RFC determination with respect to Plaintiff's alleged mental impairment. This assertion of error is therefore rejected.

**4. Additional evidence.**

Although not an assertion of error, Plaintiff finally claims that remand is necessary for consideration of additional evidence that was submitted after his hearing. The evidence in question is a medical source statement ("MSS") provided by Dr. Stephen Kent following examination of Plaintiff on May 1, 2013. AR 710-21. Plaintiff claims that such evidence is "new and material," which tracks the language required for remand under sentence *six* of 42 U.S.C. 405(g), yet Plaintiff asks that such evidence be reviewed upon remand pursuant to sentence four. DE 13 at 17. Regardless, the Court declines to remand this case for consideration of Dr. Kent's opinion.

Sentence six of 42 U.S.C. § 405(g) states in relevant part that the Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material a*nd that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding*" (emphasis added). Plaintiff argues that Dr. Kent's opinion is both new and material since it "could not have been presented previously because it came from a physician Plaintiff did not see until after the hearing." DE 13 at 17. This falls short of demonstrating "good cause" as to why the opinion from Dr. Kent, who examined Plaintiff at the request of counsel for Plaintiff (AR 713), was not procured until months after the ALJ had issued her opinion. AR 9. As noted by Defendants, the fact that counsel for Plaintiff did not obtain the opinion until months after the hearing does not

18

establish "good cause." *See Perkins v. Apfel*, 14 F. App'x 593, 598 (6th Cir. 2001) ("The mere fact that the evidence at issue was not created until nine months after the ALJ's decision ... does not establish good cause.").

Plaintiff additionally notes that Dr. Kent's opinion was accepted into evidence by the Appeals Council but was "not acted upon[.]" DE 13 at 11-12. However, Plaintiff's implicit suggestion that the Appeals Council's admission of such evidence demonstrates "good cause" justifying remand has been refuted by the Sixth Circuit in a case involving a similar argument:

> [Plaintiff] also suggests that because the Appeals Council considered his new psychiatric evidence, it might implicitly have found good cause. [Plaintiff] fails to realize, however, that the Appeals Council is not required to find good cause in order to consider new evidence. There is no mention of "good cause" in 20 C.F.R. § 404.970(b), which sets forth the basis upon which the Appeals Council will review new evidence. The only apparent criteria are that the evidence be "material" and that it "relate[ ] to the period on or before the date of the administrative law judge hearing decision." Therefore, there is no merit to [Plaintiff's] suggestion here.

*Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 149 (6th Cir. 1996). The undersigned similarly finds no merit in Plaintiff's position that good cause has been established.

## V. RECOMMENDATION

For the above stated reasons, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion for judgment on the administrative record (DE 12) be DENIED and the Commissioner's decision be AFFIRMED.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See*

*Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    Respectfully submitted,

    _____
    BARBARA D. HOLMES
    United States Magistrate Judge